# In the Court of Common Pleas of Columbia Co.

## In Equity.

THE LOCUST MOUNTAIN COAL AND IRON COMPANY *v.* JNO. CURRAN AND OTHERS, SCHOOL DIRECTORS, AND MARTIN PURCELL, COLLECTOR OF TAXES OF CONYNGHAM TOWNSHIP SCHOOL DISTRICT.

### Motion for a Preliminary Injunction.

In a proceeding by bill in equity to restrain the collection of school taxes, the court will not inquire into the validity of the appointment of the collector, he having given bond with sureties approved as required by law.

The act of May 8, 1854, did not establish a fixed rate of taxation for school purposes. It merely provided a standard, by which the MAXIMUM rate could be ascertained at the time the tax is levied; to wit: the amount of both State and county taxes, authorized by law.

The act of 23 Feb. 1866, exempting real estate from the three mill tax for State purposes, operated as a reduction of a like amount on that species of property for school purposes.

A levy of thirteen mills on real estate is three mills in excess of what the law allows. The collection of such excess may be restrained by injunction.

Opinion filed Sept. 29, 1874, by

ELWELL, P. J. The plaintiff's bill alleges that Martin Purcell, being one of the school directors of Conyngham township, was appointed collector of the school taxes, and also, that the school directors of that district have levied a tax of thirteen mills on the dollar of the adjusted valuation of their real estate which the defendants are proceeding to collect. It is complained that Martin Purcell was improperly appointed collector and that the tax above ten mills on a dollar is illegal. It appears by the answer of the defendants, that Martin Purcell, being one of the school directors, was duly elected treasurer of the Board, and that no person offering to take the office of collector, he was appointed thereto, and gave bonds approved as required by law for the due performance of the duties of the respective offices. The plaintiff now moves for preliminary injunction to restrain the collection of any part of said tax by Martin Purcell as collector, and to prevent the collection of three mills, part of said tax by the hand of any person.

The first ground upon which the injunction is asked is untenable. The collector is at all events an officer *de facto*, the validity of whose appointment cannot be inquired into in this collateral proceeding. And if it could, we would not put forth the strong arm of the law to stay the collection of school taxes, unless we were satisfied that irreparable loss

would be sustained by the taxpayers and the district, unless we did. Nothing of the kind is alleged, and for that reason alone, we would refuse the injunction to restrain the collection of the tax generally. In another case, No. 296, Sept. T. 1874, a *quo warranto* against Martin Purcell to show by what authority he exercises the duties of the office of collector of school taxes of Conyngham school district, in an opinion just filed, we held, for reasons given, that he was duly appointed to the office and gave judgment in his favor. That judgment is *conclusive* of his right while it stands unreversed upon the record.

But the directors went beyond their authority when they levied a tax of more than ten mills on the last adjusted valuation of the real estate in their district. At the time of levying this tax, the rate per cent for county taxes was limited by law to ten mills on a dollar. Taxation is regulated wholly by statutes. Both the subjects for taxation, and the amount of tax authorized can be ascertained only by reference to Acts of Assembly. In order that school directors might be provided a ready and convenient guide, both as to subjects of taxation, their values and the amount of tax which they are authorized to levy, the legislature passed the act of May 1854, the 29th section of which requires the commissioners of the county to furnish them with a correct copy of the last adjusted valuation of proper subjects and things made taxable for State or county purposes, which subjects and things are made taxable for school purposes. Having thus ascertained the objects of taxation, the next section regulates the amount of tax thereon. Not by any specified rate per cent, but by a maximum, to be ascertained by reference to other laws upon the subject. The 30th section of the act provides, that "the board of directors shall, on or before the first Monday in June, *annually*, proceed to levy and apportion the said school tax, pursuant to this act, not exceeding the amount of State and county taxes authorized by law to be assessed on all objects, persons and property, made or to be made taxable for State or county purposes."

The amount is not to exceed that authorized by law for State and county purposes. Authorized when? at the time of passing the act or at the time of levying the tax? If the former was intended, the lawmakers could scarcely have omitted the word "now" and thus establish a fixed rule not to be varied by subsequent legislation in regard to State or county tax. I submit that the amount of tax which could be levied was to be ascertained by the standard furnished by the act of 1854, which was and is the amount authorized by law *at the time of levying* the tax, and not at the date of the enactment.

The act of 8 April, 1846, forbids the granting of injunctions by the courts against the erection of any public works "erected or in progress" under the authority of an act of the legislature, until the question of title

and damages were decided,—*held* that the "works erected or in progress" referred to, were not limited to the date of the enactment, but that the law applied to the time when resort was had to a court of equity. —Wolbert v. the City of Philadelphia, 12 Wright 439. The rules of construction there applied are applicable to the act of 1854. The directors are required annually to levy a tax, and the law in force at the time, as to the amount, is the authority under which they act.

In 1854 the law imposed a tax of three mills on a dollar of the valuation of real estate for State purposes, and ten mills for county purposes. But on the 23d of February, 1866, P. L. 83, an act was passed exempting real estate from all taxation for State purposes. From that time to the present the amount authorized by law to be levied upon real estate for either State or county purposes or both is limited to ten mills on a dollar of the valuation.

I am unable to concur in the views expressed by the superintendent of common schools on this subject. He declares it to have been the "obvious intention of the law to fix the amount of tax at thirteen mills on the dollar, and thus avoid the perplexing changes that would otherwise cripple the financial managements of school affairs." School decisions 1873, page 74. With all due respect to the opinion of the superintendent, I am compelled to differ with him, and to hold, that the manifest and plain intent of the act was to allow to be imposed each year for school purposes, as much as the law allowed for both State and county purposes.

I hold, too, that if the legislature should add to the list of things made taxable, some things not taxable for State or county purposes in 1854, such subjects would at once become taxable for school purposes. And if the rate per cent were increased from what it was in 1854 for State purposes the increase for School purposes according to the express language of the act might be equal to the amount thus increased. If this be so, and it is too clear to be doubted, it follows with equal reason, that when subjects of taxation are reduced in number, or the tax made less for State and county purposes, the amount of school tax undergoes a like reduction.

Since the act of 1866 the amount of tax on real estate is limited by law to ten mills on a dollar for State and county purposes—there being no State tax and the limit for county being that amount. In adopting thirteen mills as the rate per cent in taxing real estate the school directors exceeded their authority, and to the extent of that excess may be enjoined. Shirk v. Bucher 3 P. F. Smith 94.

In Gorrell v. Murphy, 1 Legal Gazette Rep. 495, we refused to enjoin the collector, holding that although irregularly assessed the tax levied in that case was not illegal. In the argument we went further than was necessary, but the point decided was not in conflict with what we now hold.

And now, September 29th, 1874, the motion for a preliminary injunction came on to be heard and was argued by counsel, and upon due consideration thereof it is ordered that a preliminary injunction be issued to restrain the defendants from the collection of more than ten mills on the dollar of the last adjusted valuation of the real estate of the plaintiff in Conyngham township. Before the writ goes out the plaintiff is required to give bond in the sum of three hundred dollars as required by law with surety to be approved by me.